IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| CAROL SHERMAN, | |
|---|---|
| Plaintiff, | Case No. 4:11-cv-00195-BLW |
| v. | **MEMORANDUM DECISION AND ORDER** |
| IDAHO TROUT PROCESSORS COMPANY dba IDAHO TROUT COMPANY, | |
| Defendant. | |

## INTRODUCTION

The Court has before it Defendant's Motion to Compel Rule 35 Examination (Dkt. 28). The Court has read and fully considered the briefing and related materials submitted by the parties, and has further determined that oral argument will not significantly aid in its decision. Accordingly, the Court issues the following Memorandum Decision and Order granting Plaintiff's Motion.

## BACKGROUND

Plaintiff, a former employee at Defendant's Filer, Idaho fish processing facility, brought this suit alleging she was terminated from her employment because of her disability in violation of the Americans with Disabilities Act (ADA). Plaintiff alleges that her disability stems from her arthritic knees. *Compl.* ¶ 6, Dkt. 1. Plaintiff further alleges that her disability did not prevent her from performing the essential functions of

her employment, given reasonable accommodations, and that Defendant rebuffed her attempts to secure such accommodations, choosing to fire her instead. *Id.* ¶¶ 12-13.

Defendant brings this motion to compel Plaintiff to undergo a physical examination, termed a "Functional Capacity Assessment," on the ground that the examination is needed to "assess Plaintiff's alleged disability related to her knees and Plaintiff's ability to perform the essential functions of her former job." *Mtn. to Compel* at 5, Dkt. 26-1. The proposed examination would be performed by Scott Billing, an occupational rehabilitation specialist, and would encompass a variety of tests designed to assess physical vocational capacities including "work day tolerance, sitting tolerance, standing tolerance, upper extremity tolerance, walking tolerance and positional tolerances as well as lifting capabilities" in order to help determine "if accommodation is needed" and "the levels of activity that an individual physically could tolerate" in the context of vocational retraining. *Decl. of Scott Billing* at 1-2, Dkt. 26-4. Plaintiff suggests that the testing will take four to five hours, based upon representations made by Defendant's counsel. *Aff. of Counsel* ¶ 4, Dkt. 28-1. There is no indication in the record that the evaluation sought is in any way invasive or unusually painful or embarrassing. Defendant has endeavored to make the testing as convenient as possible for Plaintiff in terms of time and location.

Plaintiff has three primary objections to the proposed examination. First, Plaintiff argues that the evaluation necessarily cannot produce relevant, admissible evidence, because it has no bearing upon Plaintiff's "claim of bilateral arthritis in her knees." *Pl.'s Resp.* at 3, Dkt. 28. Second, Plaintiff argues that Defendant failed to specify the manner,

MEMORANDUM DECISION AND ORDER — 2

conditions, and scope of the examination as required by Rule 35. Third, Plaintiff argues that Defendant has failed to demonstrate that good cause exists for ordering the examination, because Defendant has not shown that Plaintiff is "employable given her known conditions and circumstances." The Court has considered each of these arguments, and, for the reasons set forth below, has determined that they are without merit. Accordingly, the Court will grant Defendant's motion.

## LEGAL STANDARD

Rule 35 of the Federal Rules of Civil Procedure enables a court, on motion made upon good cause, to order a "physical or mental examination by a suitably licensed or certified examiner" of a party "whose mental or physical condition . . . is in controversy." Fed. R. Civ. Proc. R. 35(a)(1), 35(a)(2)(A). The Supreme Court has stated the test for compliance with the Rule as "whether the party requesting a mental or physical examination has adequately demonstrated the existence of the Rule's requirements of 'in controversy' and 'good cause.'" *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). In order to meet this test, the moving party must do more than demonstrate that the examination will produce relevant evidence; rather, it must show "that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* However, in cases in which the Plaintiff has placed her own physical or mental condition "clearly in controversy," reference to the allegations in the pleadings may be enough. *Id* at 119.[1] In such cases, the

---

[1] The paradigm example of such a case would be one for damages stemming from personal injury allegedly caused by Defendant's negligence. *Schlagenhauf*, 379 U.S. at 119.

"good cause" requirement is satisfied by the central importance of the evidence sought to be obtained to the determination of the merits of Plaintiff's claim. *Id.*

## ANALYSIS

### I. The requested examination may yield relevant evidence.

Plaintiff argues that because the desired examination is not capable of shedding light upon the existence or nonexistence of a specific disability – Plaintiff's bilateral arthritis – it cannot produce evidence relevant to the case. To the extent this argument suggests that Plaintiff's physical vocational capacities are not in controversy, the argument is unpersuasive. Plaintiff's claim, and any defenses to it, do not necessarily depend solely upon whether Plaintiff suffers from bilateral arthritis; rather, it also turns on whether she is "disabled" within the meaning of the ADA. Moreover, even if the Defendant concedes that Plaintiff has arthritis, the Defendant may defend against Plaintiff's ADA claim either by showing that Plaintiff's arthritis did not rise to the level of a disability, or that her arthritis was so severe and so constraining that it rendered her unqualified to continue in her employment, with or without an accommodation.

Thus, Plaintiff has placed her physical vocational capacities in controversy, and the requested Functional Capacity Assessment, which is designed to assess precisely those capacities, may yield information directly relevant to the merits of Plaintiff's claims, to the extent of her damages, and to the existence of any defenses. *Decl. of Scott Billing* at 1-2, Dkt. 26-4.

### II. Defendant's motion satisfies the *Schlagenhauf* test.

As indicated above, the Court has no trouble concluding that Plaintiff's physical

condition as it relates to her vocational capacities is in controversy, and Defendant has met its burden in that respect. *Def.'s Mtn. to Compel* at 3-4, Dkt. 26-1. Moreover, the "good cause" requirement is satisfied by the very fact that the existence and extent of Plaintiff's physical capacities are squarely at issue in this case. *Schlagenhauf*, 379 U.S. at 119. Defendants have therefore made the showings required by Rule 35.

**III.    A qualifying order can be drafted.**

Plaintiff also argues that Defendant failed to provide sufficient information concerning the manner, conditions, and scope of the proposed examination to enable the Court to draft an order sufficiently detailed so as to satisfy Rule 35(a)(2)(B) (stating that the order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.")  This argument, too, is unpersuasive.

Although somewhat generic, the examiner's Declaration adequately describes the manner, conditions, and scope of the proposed examination. The examiner explains that he will conduct a Functional Capacity Assessment, which is designed to identify the current capacities of the plaintiff. *Decl. of Scott Billing* at 1-2, Dkt. 26-4. He explains that the capacities will be determined based upon consistencies and inconsistencies when interfacing grip dynamometer graphing, pinch dynamometer graphing, heart rate variations, weights achieved, and selectivity of pain reports and pain behaviors. He then gives the identified current capacities, and notes that they are useful in determining if an individual has the current capacity required to return to gainful employment or if an accommodation is needed. This is sufficient to fulfill the manner, conditions, and scope

requirements and to satisfy Rule 35(a)(2)(B). Moreover, and contrary to Plaintiff's suggestion, there is no requirement in Rule 35 that the order must separately set forth the time, place, manner, conditions, and scope of each component of the examination.

**IV.     Defendant need not show that Plaintiff is employable in order to show good cause for the examination.**

Plaintiff argues that if Defendant cannot demonstrate that Plaintiff, given not only her arthritic knees but also her age, education, and obesity, is "employable" in the first instance, then the proposed examination, which is designed to measure present physical vocational capacities, could not provide useful information, and hence there is no good cause to order it. To the extent it can be understood, this argument appears to be largely a restatement of Plaintiff's failed relevance argument, and it is rejected for the reasons stated above.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Compel Rule 35 Examination (Dkt. 26) is **GRANTED**.

2. Plaintiff is hereby ordered to appear for a Functional Capacity Assessment at the St. Luke's affiliated clinic in Twin Falls, Idaho, on April 12, 2012, at 9:00 a.m. Defendant's counsel shall provide the address to Plaintiff's counsel if necessary. The assessment shall be conducted by Scott Billing, Director of Occupational Rehabilitation, and shall comport, in its manner

and scope, with the representations contained in his Declaration (Dkt. 26-4).



DATED: April 9, 2012

_____
B. Lynn Winmill
Chief Judge
United States District Court